AO 106 (REV 4/10) Affidavit for Search Warrant                    AUSA Tiffany Ardam, (312) 353-0951

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

In the Matter of the Search of:

The apartment located at 5030 North Marine Drive, Unit 401, in Chicago, Illinois, further described in Attachment A

Case Number: 17 CR 796

Judge Matthew F. Kennelly

**FILED**

DEC 11 2018

JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Jose Munoz, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of Illinois, there is now concealed:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence and instrumentalities.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 115(a)(1)(b) | threat to assault or murder a federal law enforcement officer with intent to impede, intimidate, or interfere with such law enforcement officer while engaged in the performance of official duties or with intent to retaliate against such law enforcement officer on account of the performance of official duties |

The application is based on these facts:

**See Attached Affidavit,**

Continued on the attached sheet.

_____
*Applicant's Signature*

JOSE MUNOZ, Special Agent, Federal Bureau of Investigation
*Printed name and title*

Sworn to before me and signed in my presence.

Date: December 11, 2018

_____
*Judge's signature*

City and State: Chicago, Illinois

MATTHEW F. KENNELLY, U.S. District Judge
*Printed name and title*

UNITED STATES DISTRICT COURT )
)
NORTHERN DISTRICT OF ILLINOIS )

### AFFIDAVIT

I, Jose Munoz, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately August 2012.

2. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violent crimes, including, among others, kidnapping and bank robbery. I have participated in the execution of multiple federal search warrants.

3. This affidavit is made in support of an application for a warrant to search the apartment located at 5030 North Marine Drive, Unit 401, in Chicago, Illinois, described further in Attachment A (the "**Subject Premises**"), for evidence and instrumentalities described further in Attachment B, concerning threatening to assault or murder a federal law enforcement officer with intent to impede, intimidate, or interfere with such law enforcement officer while engaged in the performance of official duties or with intent to retaliate against such law enforcement officer on account of the performance of official duties offenses, in violation of Title 18, United States Code, Section 115(a)(1)(B) (the "**Subject Offense**").

4. The statements in this affidavit are based on my personal knowledge and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being

submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence and instrumentalities of violations of the **Subject Offense** are located at the **Subject Premises**.

## I.  FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

### Background

5.  According to court records, on or about December 12, 2017, EDWARD SOYBEL was charged with 10 counts of intentionally causing damage to W.W. Grainger Inc. computers, one count of attempting to cause such damage, and one count of attempting to access Grainger's computers without authorization. On or about December 14, 2017, SOYBEL was released on bond. The defendant's jury trial began on December 10, 2018.

### Anonymous Tip

6.  On or about December 2, 2018, the FBI received an online anonymous tip regarding a video made by EDWARD SOYBEL stating that SOYBEL threatened the prosecutor in his case. The tipster stated that in the video, SOYBEL is seen live on camera in a chatroom. The tipster provided a link to a video and described the video as depicting SOYBEL stating that, "he'd like to kill witnesses to his case with an AK47 along with the prosecutor." The tip also stated that the video depicts SOYBEL drinking beer and driving. According to the tipster, the video depicts

2

SOYBEL driving in his car. The tip stated that SOYBEL was driving a dark green Jaguar XJ6 Series 3 with a license plate containing "999 1." A public database confirms that a green Jaguar with a license plate containing that series of numbers is registered to SOYBEL. The tip stated that SOYBEL "regularly drives under the influence whilst on cam in this chatroom (which is his phone, so he's also driving without due care and attention) and he is seen there drinking more days than not."

### The Subject Video

7. On or about December 10, 2018, law enforcement downloaded the video from the link provided by the tipster (the "**Subject Video**"). I have reviewed the **Subject Video**, which is approximately 18 minutes long and depicts EDWARD SOYBEL in a vehicle. I have compared the individual depicted in the **Subject Video** with the Illinois Driver's License of EDWARD SOYBEL and they appear to be the same individual.

8. In the **Subject Video**, SOYBEL is alone in the driver's seat of a vehicle, drinking beer, and driving at times. Throughout the **Subject Video**, "4R7USA" is in the bottom right corner of the video. At this time, the chat application used by SOBEL when the **Subject Video** was made is unknown. The **Subject Video** appears to be taken from a mobile device, such as a cellphone. In the **Subject Video**, SOYBEL discusses his upcoming trial on December 10, 2018 and his pretrial release and makes threatening comments towards the prosecutor, agents, and witnesses. In

3

addition, it appears SOYBEL may be speaking with an individual while the video was recording. Some of SOYBEL's relevant statements include the following:

Motherfucker going to end up like that and Lord if he loses that case, that fucking prosecutor, I am going fucking kill that motherfucker I am going to run his ass over with a Jaguar man. I am going to run over a prosecutor with a Jaguar; when I catch his ass, I know where he lives, I am goin' to catch him outside I am going to run his ass over with a jaguar man. And the other fucking witnesses, I am going to burn their houses and shit. All their houses are going to burn up in a fire, like in California type shit. I am going to light their fucking houses on fire, man. I hope they have fire insurance. I'll fucking hang that motherfucker, that one motherfucker he ain't going to survive man that fucking pieces of shit, all the FBI agents they're all going to get killed man, with a fucking AK 47, they gonna shoot 'em all up, fuckin shoot them all up, line them up face the flag and die motherfucker. [1]

9. In the **Subject Video**, SOYBEL shows the camera what appears to be a pocketknife and states, "Hey look I stole this today, look I stole this pocket knife from the Dollar store." SOYBEL then pulls out various components to the pocket knife and says, "[I]t's got a little knife on the other side, a fake saw don't cut shit, cut that fucking niggas dick off with this saw man. The saw don't work, bullshit."

10. At another point in the **Subject Video**, SOYBEL states:

Yeah man you better laugh, man Imma go to jail, then I'll be cool with the gangsters. I am going to tell them to shoot that motherfucker. I am going to tell them to kill that fucking prosecutor man. He's going to be shot. I am goin' to shoot him myself when I get an AK47 and shoot, I'll put it in semi-automatic mode, not fully automatic, semi so it just shoots once like 'Boom!' And I'll be hiding out in his block, when he comes outside in the morning before court, I'll fucking shoot that motherfucker, make his head explode all over the street. His brain will be all over the fucking curb. …. It's easy to get guns. I'll go to the

---

[1] The conversations from this video included in this affidavit are based on preliminary transcripts and are not final and subject to change.

4

gangsters and I'll be like look man, I'll give you $1,000 for a fucking AK47 and he'll be like alright.

***Subject Premises***

11.     Law enforcement conducted surveillance during the morning hours of December 11, 2018 and observed SOYBEL depart the **Subject Premises** to travel to court. In addition, SOYBEL has reported the **Subject Premises** as his residence while on pretrial release.

12.     Based on my training and experience, I know that individuals often keep computers and Internet capable devices in their homes. In addition, it appears that SOYBEL uploaded the **Subject Video** with an Internet capable device. I also know, based on my training and experience, that many video chat applications can be accessed from multiple platforms, including laptop computers, desktop computers, and mobile devices.

13.     On or about December 11, 2018, law enforcement encountered SOYBEL's relative ("Individual A") in the garage of the **Subject Premises**. Individual A also resides in the **Subject Premises**. Law enforcement informed Individual A that they were in the process of applying for a search warrant and asked Individual A if he/she would allow them into the home. Individual A agreed and escorted law enforcement to the **Subject Premises**. Law enforcement asked Individual A if they could look around to see if anyone else was in the **Subject Premises** and Individual A agreed. Individual A showed law enforcement the premises, including SOYBEL's bedroom. Law enforcement observed two laptop

5

computers in SOYBEL's bedroom and asked Individual A if SOYBEL's cellphone was in the **Subject Premises**. Individual A pointed to a cellphone in SOYBEL's bedroom.

## II. PROCEDURES REGARDING POTENTIALLY PRIVILEGED MATERIALS

14.     EDWARD SOYBEL is currently represented by counsel, and there is a possibility that the search of the **Subject Premises**, or devices recovered from the **Subject Premises**, will reveal materials protected by the attorney-client privilege. In anticipation of that possibility, the FBI and U.S. Attorney's Office have established a Taint Team made up of Assistant U.S. Attorneys ("AUSAs") and agents who are not involved in the prosecution of 17 CR 796. In the event that the search reveals materials protected by the attorney-client privilege, Taint Team agents and AUSAs will not disclose those materials, or their contents, to members of the trial team. In addition, if attorney-client privileged materials are viewed or recovered during the search, members of the Taint Team will not participate in any prosecution related to the search of the **Subject Premises**.

## III. SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

15.     Based upon my training and experience, and the training and experience of specially trained personnel with whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all electronic storage media items (*e.g.* computer hardware, computer software,

6

computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a.  Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b.  Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

7

16. In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

17. In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## IV. PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

18. Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

19. The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

8

a.    examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.    surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d.    opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

20.    The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

9

## V.    CONCLUSION

21.    Based on the above information, I respectfully submit that there is probable cause to believe that the **Subject Offense** has been committed and that evidence and instrumentalities relating to this criminal conduct, as further described in Attachment B, will be found in the **Subject Premises**, as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for the apartment located at the **Subject Premises**, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B, pursuant to the protocol described in the addendum to Attachment B.

FURTHER AFFIANT SAYETH NOT.

Jose Munoz
Special Agent
Federal Bureau of Investigation

Subscribed and sworn
before me this 11th day of December, 2018

Honorable MATTHEW F. KENNELLY
United States District Judge

10

## ATTACHMENT A

## DESCRIPTION OF PREMISES TO BE SEARCHED

The premises to be searched is apartment unit 401 located at 5030 North Marine Drive in Chicago, Illinois. The building in which the premises is located is a high-rise glass and concrete building located on the southwest corner of the intersection of Carmen Avenue and North Marine Drive. The front door of the building faces Carmen Avenue and enters into a lobby near an elevator bank. Unit 401 is located on the fourth floor of the building and occupies the northwest corner of the building.



## ATTACHMENT B

### LIST OF ITEMS TO BE SEIZED

Evidence and instrumentalities concerning violation of Title 18, United States Code, Section 115(a)(1)(B), in any form, as follows:

1.   Items of clothing and apparel seen on the **Subject Video**;

2.   Data and records related to any username or password for seized devices;

3.   Data and records, establishing the location of SOYBEL or his electronic devices around the time the **Subject Video** was posted;

4.   Routers, modems, and network equipment used to connect computers to the Internet;

5.   Records or data identifying the account or individual that posted the **Subject Video**;

6.   Any computer equipment or electronic devices;

7.   Data or records reflecting any threats to federal law enforcement officials or witnesses, or communications of such threats;

8.   Any firearms or weapons, including the pocketknife shown in the **Subject Video**;

9.   With respect to any computer equipment or other electronic devices, including Internet-capable cellular phones (hereinafter "computer"):

a. records or data identifying video chat or video calling applications used by SOYBEL;

b. data from video chat services or applications identifying (i) SOYBEL's contacts, (ii) communications made or received by SOYBEL and (iii) SOYBEL's username;

c. evidence of who used, owned, or controlled the computer at the time the **Subject Video** described in this warrant was created, edited, uploaded or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

d. evidence of software that would allow others to control the computer, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

e. evidence of the lack of such malicious software;

f. evidence of the attachment to the computer of other storage devices or similar containers for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer;

h. evidence of the times the computer was used;

2

   i.      passwords, encryption keys, and other access devices that may be necessary to access the computer;

   j.      documentation and manuals that may be necessary to access the computer or to conduct a forensic examination of the computer;

   k.      records of or information about Internet Protocol addresses used by the computer;

   l.      records of or information about the computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

   m.      contextual information necessary to understand the evidence described in this attachment.

## ADDENDUM TO ATTACHMENT B

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a. examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c. surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B; and

d. opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.